**Opinion filed January 31, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00043-CR

_____

## PAUL EUGENE UMSTEAD, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR20031**

## M E M O R A N D U M   O P I N I O N

Paul Eugene Umstead, Jr. appeals his conviction of attempted capital murder. The jury found Appellant guilty and answered true to the special issue of a deadly weapon. The trial court assessed Appellant's punishment at confinement for twenty-five years and sentenced him accordingly. In two issues, Appellant challenges the sufficiency of the evidence and complains of error in the jury charge. We affirm.

*The Evidence at Trial*

Complainant James Clark testified to the events giving rise to Appellant's charges. Clark said that he had gotten to know Appellant and John "Tiger" Walker Jr. when he lived at the Savoy Apartments in Brownwood. Tiger lived with his father in the apartment upstairs from Clark's apartment, and Appellant visited Tiger and other people in the complex on multiple occasions. Clark said that he, Tiger, and Appellant would mingle, talk, and drink beer together at times. Clark is an MHMR patient and has been diagnosed with schizophrenia and bipolar disorder. Clark regularly takes various medications for his conditions, including Valium, Seroquel, and Ambien. Clark said that he probably had taken the medications on the day of the alleged offense and had been drinking alcohol throughout the day. At some point, he and Tiger engaged in a physical altercation after Clark accused Tiger of stealing his medication. Both Clark and Tiger sustained injuries as a result of the fight, and Tiger visited the hospital for treatment.

Later that night, around 3:00 a.m., Clark awoke in his apartment to a knock at his door. When Clark opened the door, he saw Appellant standing outside with a bat in his hands. Clark did not invite Appellant into the apartment. The next thing Clark remembered was a "whack" and a bright flash of light. Clark said that he was "90 percent unconscious" at that point in time. Clark remembered that after he hit the ground, he heard a voice, which he thought sounded like Tiger's, that said, "Let's drag him in the bedroom and hit him some more." Clark never saw Tiger, but based on his knowledge and past experience with him, Clark believed that Tiger made the statement. Clark said that, although he was in a "blackout" due to the alcohol and medication, he actually remembered some of the events. He said that those memories were not hallucinations.

2

As a result of the assault, Clark sustained a large laceration, a cut in his scalp on the left side, and a depressed skull fracture. In addition, some of Clark's scalp appeared to be missing, and doctors had to perform surgery to insert plates to repair Clark's skull. Clark remembered waking up at the hospital and having Troy Carroll, a sergeant with the Brownwood Police Department, speaking to him. At the hospital, Sergeant Carroll showed Clark a photo lineup, and Clark identified Appellant as the person who hit him. Clark also identified Tiger in a separate photo lineup as being involved in the incident.

Brian Tompkins, a Brownwood police officer, testified that he responded to the disorderly conduct call stemming from the initial confrontation between Tiger and Clark. Officer Tompkins said that he arrived at the scene, made contact with Tiger, and eventually called EMS to take Tiger to the hospital. Clark told Officer Tompkins that he wished to pursue criminal charges against Tiger for his role in the fight. After Officer Tompkins told Tiger about Clark's plans to press charges, Tiger told Officer Tompkins that he, too, wanted to pursue criminal charges against Clark.

Richard Williams, a corporal with the Brownwood Police Department, was the first officer on the scene after the baseball bat assault. Corporal Williams found Clark in his bedroom with large lacerations and an extreme amount of blood all over his head. Corporal Williams called EMS, and Clark was taken to the hospital. After talking to Tim Allyson, who was the person who first reported the assault, Corporal Williams developed Tiger and Appellant as possible suspects.

Sergeant Carroll testified that he responded to a call that a subject had been beaten severely with a baseball bat. Upon entering Clark's apartment, he saw blood in smaller concentrations and growing in concentration as he continued further inside the apartment. Sergeant Carroll saw blood splatter going up the walls all over the apartment, including in the kitchen, bedroom, and living room.

3

According to Sergeant Carroll, based on the amount and location of the blood inside the apartment, there should have been at least some trace of blood on Clark's assailant and on the weapon used in the assault.

Sergeant Carroll and retired Brownwood Police Officer Robert Mullins conducted searches and interviews in the aftermath of Clark's assault. Police officers took Clark's wallet from under his bed; the wallet did not have any money in it. They did not find any of Clark's medication in his apartment. When initially interviewed, Tiger said that he had no involvement in the assault and that he was asleep at the time. Appellant likewise denied any involvement and tried to blame the assault on Allyson, who was the upstairs neighbor of Clark and a friend of Tiger's father. Appellant acknowledged that he had been present at the apartment complex throughout the day and that he had seen Clark and Tiger get into confrontations, but Appellant said that he left and went home around 6:00 p.m. When officers searched Appellant's apartment, they came across a washing machine that still had wet clothing inside. They also found shoes that appeared to have been recently cleaned. Appellant's bathtub contained a pail and what appeared to be bleach water, and there was a wet rag lying beside the bathtub.

Sergeant Carroll testified that he visited Clark in the hospital multiple times, and that, eventually, Clark was able to communicate through writing. Clark wrote on a piece of paper who he believed was responsible for his assault. At the hospital, Sergeant Carroll showed Clark multiple photo lineups, and Clark identified Appellant as his assailant. Clark also identified Tiger as the person whose voice he heard during the attack and Allyson as the person who found him after the attack. According to Sergeant Carroll, Clark at no time changed his opinion about what had happened to him and who was responsible. Sergeant Carroll also said that Allyson is fairly short and that it is easy to tell the

4

difference between him and either Tiger or Appellant because of their difference in size.

After further investigation, Sergeant Carroll spoke with Tiger again. Tiger agreed to immunity in the case in exchange for telling the truth about what happened. Tiger told Sergeant Carroll that he had witnessed the beating of Clark. According to Tiger's version of the events, after he and Clark had fought over some pills, he called Appellant, who said, "[W]hat do you want to do about it?" Tiger responded, "Whatever you want to do." Appellant came to Tiger's apartment, and both of them went to Clark's door. When Clark answered the door, Appellant immediately hit him with the baseball bat many times. During the assault, Tiger took some of Clark's money and told Appellant to "finish him off." Tiger told Sergeant Carroll that the bat used by Appellant was "chrome" and that he watched Appellant hit Clark with it "like he was crazy, like he liked the blood flow." Tiger told Sergeant Carroll that he could see bits and pieces of Clark's skull sticking out and that blood was all over the floor and walls.

Tiger testified that he lived with his father in the upstairs apartment at the time of Clark's assault. Tiger knew Appellant through a mutual friend and knew Clark because he lived in the same apartment complex. Tiger said that he and Clark initially had some problems because Clark accused Tiger of taking his medication. Tiger and Clark got into a fight over the pills, and Clark punched Tiger in the face. As a result, Tiger's tooth was knocked out, and he had a broken nose. After a second physical altercation, Tiger went to the hospital for treatment of his injuries. Because of these altercations, Tiger "had in [his] mind that he was going to get back at Clark." When he returned home, Tiger called Appellant and told him about his confrontation with Clark that had occurred earlier in the day.

Tiger called Appellant because Appellant had previously "had words" with Clark, and Tiger knew that Appellant was still angry at Clark. Tiger told

5

Appellant, "Come on over here. Let's handle it." According to Tiger, Appellant arrived in his van shortly thereafter. Tiger and Appellant put gloves on, went downstairs, and knocked on Clark's door. Tiger said that, upon Clark answering the door, Appellant immediately whacked him in the head with a baseball bat and stepped inside the apartment. Appellant proceeded to hit Clark multiple times in the same spot; Tiger said that he could see the flesh ripping apart from the skull and bone fragments in the air. After Appellant had hit Clark with the bat several times, Tiger rolled Clark over and took approximately $140 from his pockets. Tiger then said, "Let's drag him to the bedroom, finish him off." They did not move Clark, and after Appellant hit him a few more times, Tiger and Appellant left the apartment. Tiger further testified that he decided to tell the truth as to what happened after he found out that he would receive full immunity in the case in exchange for doing so.

Eric Morgan testified that he was serving a 24-year sentence for delivery of a controlled substance when he came into contact with Appellant while they were cellmates in the Brown County Jail. Morgan said that he saw Appellant's file for the case, which included pictures of Clark's injuries from the assault, and that Appellant indicated that he was involved in causing those injuries. Appellant told Morgan that there had been an altercation because of some pills and that Appellant was "taking up for Tiger." According to Morgan, Appellant made it sound like he was the one who beat Clark with the bat. On cross-examination, Morgan admitted that he decided to testify in this case after his relationship with Appellant had soured. Because Appellant "had got [him] in trouble," Morgan decided to make a deal and talk about what Appellant had told him regarding Clark's assault. Morgan received a reduction of his sentence from thirty years to twenty-four years in exchange for his testimony.

6

Lab results from various items taken in connection with the assault showed that Tiger was linked to the scene through DNA on a cigarette butt found in Clark's apartment. No physical evidence connected Appellant to the scene.

*Sufficiency Analysis*

In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction for attempted capital murder. We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person commits the offense of capital murder if he "commits murder as defined under Section 19.02(b)(1), and: . . . (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or

terroristic threat." *Id.* § 19.03(a)(2) (West Supp. 2013). A person may be found guilty of an attempted offense if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a).

Appellant's complaint regarding the sufficiency of the evidence is confined to the issue of identity: he argues that the evidence was insufficient to support the jury's finding that he was involved in the assault of Clark. Appellant argues that his identification by three key witnesses was not credible and that, therefore, the jury's reliance on their testimony was irrational. Given the lack of DNA evidence linking Appellant to the bloody crime scene, Appellant contends that no rational trier of fact could have concluded beyond a reasonable doubt that he was involved in the crime.

We have reviewed the entire record according to the *Jackson* standard, and we conclude that the evidence was sufficient to support Appellant's identification as the person who beat Clark with a bat. The weight to be given testimonial evidence is within the sole province of the jury because the weight turns on the jury's evaluation of witness credibility and demeanor. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). Appellant's arguments on appeal attack the credibility of each witness, but credibility is an issue for the jury to decide. *See Taylor v. State*, 279 S.W.3d 818, 822–23 (Tex. App.—Eastland 2008, pet. ref'd). The jury here chose to accept, at least in part, the testimony proffered by Clark, Tiger, and Morgan, and their testimony is sufficient to sustain the verdict. Furthermore, the lack of DNA evidence connecting Appellant to the scene does not render the evidence insufficient to support his conviction. *See Tinker v. State*, 148 S.W.3d 666, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Viewing all the evidence in the light most favorable to the verdict and giving proper deference to the jury's credibility determinations, we conclude that a rational trier of fact could

have found the essential elements of the offense beyond a reasonable doubt. Appellant's first issue is overruled.

## Jury Charge

In his second issue, Appellant complains of error in the application paragraph of the jury charge. When an appellant claims jury charge error, the appellate court must first determine whether the charge was erroneous. *Olivas v. State*, 202 S.W.3d 137, 143–44 (Tex. Crim. App. 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). If there was an error, the court then determines whether the error was harmful to the accused. *Olivas*, 202 S.W.3d at 143–44; *Almanza*, 686 S.W.2d at 171. Because Appellant did not object to the charge at trial, we will reverse only upon a showing that the error resulted in egregious harm. *Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012).

Appellant complains of the following application paragraph, which instructed the jury to acquit him unless:

> [Y]ou find from the evidence beyond a reasonable doubt that on or about the 28th day of February, 2009, in Brown County, Texas, the defendant, PAUL EUGENE UMSTEAD, JR., did then and there, acting alone or as a party with John Franklin Walker, Jr., as that term has been previously defined, with specific intent to commit the offense of Capital Murder of James Clark, do an act, to-wit: hit victim in the head with a blunt object or bat while in the course of committing or attempting to commit the offense of Robbery, Burglary or Retaliation, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

Appellant contends that he was egregiously harmed when the trial court included the instruction on retaliation in the application paragraph because such an instruction was not supported by the evidence. Appellant argues that the retaliation statute does not cover the type of retaliation that is supported by the evidence in this case.

9

The Code of Criminal Procedure provides that the trial court must "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court's duty is to incorporate into the jury charge all of the law applicable to the criminal offense set out in the indictment. *Jones v. State*, 333 S.W.3d 615, 622 (Tex. App.—Dallas 2009, pet. ref'd). A correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011). Accordingly, the instructions that are included in the charge should be reduced to the theories that are supported by the evidence at trial. *Moulton v. State*, 395 S.W.3d 804, 810 (Tex. Crim. App. 2013).

A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act:

> (1) in retaliation for or on account of the service or status of another as a:
>
> > (A) public servant, witness, prospective witness, or informant; or
> >
> > (B) person who has reported or who the actor knows intends to report the occurrence of a crime.

TEX. PENAL CODE ANN. § 36.06(a)(1) (West 2011).

The State concedes that an act of retaliation for having been punched in the nose and having one's tooth knocked out does not meet the legal definition of "Retaliation" in the context of the offense of attempted capital murder. The State argues, however, that the evidence in this case supports the inclusion of an

10

instruction on retaliation because Clark constituted either a prospective witness or a person who had reported the occurrence of a crime, or both, within the meaning of Section 36.06(a)(1). We agree.

A "prospective witness" is any person who may testify in an official proceeding. *Ortiz v. State*, 93 S.W.3d 79, 86 (Tex. Crim. App. 2002). Formal proceedings need not be initiated. *Id.* Any person who is involved in an offense with a defendant, who sees the defendant committing an offense, or who hears the defendant discuss committing an offense is a prospective witness in the prosecution of that defendant because the witness may testify. *Id.* Whether one is a prospective witness must be judged from the standpoint of the person accused of retaliation. *Morrow v. State*, 862 S.W.2d 612, 615 (Tex. Crim. App. 1993); *In re B.P.H.*, 83 S.W.3d 400, 408 (Tex. App.—Fort Worth 2002, no pet.).

A person committing an offense need not be the person against whom the prospective witness could testify if he is charged under the law of parties. *See Nzewi v. State*, 359 S.W.3d 829, 837 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). A person can be convicted for retaliation so long as he harbors the requisite intent to harm or threaten to harm the prospective witness in retaliation for or on account of his status as a prospective witness. *See id.* Direct evidence of intent is not required; retaliatory intent can be inferred from the acts, words, and conduct of the accused. *Moore v. State*, 143 S.W.3d 305, 310 (Tex. App.—Waco 2004, pet. ref'd).

We find that the evidence, as we have outlined it above, supports the inclusion of an instruction on retaliation. Appellant argues that retaliation against another for having broken one's nose is not covered by Section 36.06 of the Penal Code. It is true that an act of revenge in response to a physical altercation, without more, is insufficient to raise an issue of retaliation as a criminal offense under Section 36.06. *See* PENAL § 36.06(a). But Appellant's position fails to identify

11

Clark as a potential witness against Tiger for the alleged assault that took place earlier in the day. The evidence adduced at trial shows that a physical altercation between Clark and Tiger occurred and that both Clark and Tiger each told Officer Tompkins that they intended to pursue criminal charges against the other.

Tiger testified that, after he returned home from the hospital, he called Appellant and told him what had happened in the fight with Clark. Appellant then asked Tiger, "Well, what do you want to do about it?" Tiger responded, "Come on over here. Let's handle it." During the beating of Clark by Appellant, Tiger said, "Let's drag [Clark] to the bedroom, finish him off." Finally, Morgan said that Appellant indicated to him that he was involved in the beating of Clark, that there had been an incident over some pills earlier in the day, and that Appellant was "taking up for Tiger." This evidence, collectively, is sufficient to raise an issue of retaliation so as to allow the jury to receive an instruction on the offense. Although there is no direct indication that Appellant's act of beating Clark was on account of his status as a prospective witness, the evidence demonstrates a nexus between an earlier crime that involved Clark and the beating that Clark took at the hands of Appellant. At a minimum, this nexus provided sufficient evidence to raise an issue of retaliation for the jury to decide, given that Appellant was charged as a party to the offense. Therefore, we conclude that the trial court did not err when it instructed the jury on retaliation as an underlying offense in his prosecution for attempted capital murder.

Having concluded that the trial court did not commit error in the jury charge, we need not conduct an egregious harm analysis. Appellant's second issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

JUSTICE

January 31, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.