**AFFIRMED; Opinion Filed July 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01465-CR

### KWAYLON WILLIAMS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 7
Dallas County, Texas
Trial Court Cause No. F-11-56237**

## MEMORANDUM OPINION
Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Lang

A jury convicted Kwaylon Williams of capital murder. The State did not seek the death penalty, and the trial court assessed a mandatory life sentence without parole. *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West Supp. 2013). In four issues, Williams asserts the evidence is legally insufficient to support the conviction, the trial court committed charge error by failing to limit the definitions of intentionally and knowingly to the applicable conduct elements and by including a definition of reasonable doubt, and the trial court lacked jurisdiction to hear the case and render judgment because the case was not properly transferred from the 195th Judicial District Court where the indictment was returned. Finding no reversible error, we affirm the trial court's judgment.

# I. FACTUAL AND PROCEDURAL CONTEXT

On June 5, 2011, at approximately 5:45 a.m., Gerald Pickard was found lying on the sidewalk outside a house in East Dallas with several gunshot wounds to his arm, hands, and chest. Gunshots had been heard approximately fifteen minutes before Pickard was found, and five fired cartridge cases from a 9-millimeter gun were found inside and near Pickard's car, which was parked across the street. Records from Pickard's cellphone led investigating officers to Eva Mallard, a prostitute who had been with Pickard and Williams hours before Pickard was shot. Based on statements by Mallard and her boyfriend, officers arrested Williams. No DNA evidence linked Williams to the offense, but Williams was found to have a knife later identified as belonging to Pickard at the time of his arrest and was seen shortly after Pickard was killed trying to cash a lottery ticket Pickard had been carrying. Alleging Williams killed Pickard in the course of committing or attempting to commit a robbery, the State charged Williams with capital murder.

At trial, Mallard testified she met Pickard at a motel at approximately 2:00 a.m. and agreed to go to the store with him. As they were leaving, she saw Williams, her brother-in-law and a prostitute himself, and asked him to go with them. According to Mallard, Pickard was "high" and offered to share with each of them $125 from a $500 winning lottery ticket. He also offered to buy them drinks and cigarettes. Mallard testified Pickard did neither and, because he was high, she asked Pickard to drop her off near the motel after they left the store. Pickard and Williams then left. Mallard testified that around 6:00 a.m. she received a call from Williams to meet her at the motel room she and Williams were sharing. Mallard and her boyfriend went to the motel room and found several bullets on the floor. Williams explained to Mallard and her boyfriend that he had shot Pickard and was counting the bullets to see how many he had fired. Williams told Mallard and her boyfriend that he and Pickard drove "around" for a while and then

stopped at the lake. They then went to a neighborhood near the motel where Williams shot Pickard. Williams stated he took Pickard's lottery ticket and cash, and on his way back to the motel, stopped by the store to cash the lottery ticket. However, he was unable to cash it. Asked if she saw a gun in the room, Mallard testified she did. Asked how she felt about Williams after hearing what had happened, she stated she was scared he might "turn" the gun on her. She testified, however, that she stayed in the room with Williams until the following day.

Mallard's story was corroborated in large part by her boyfriend and two Dallas County jail inmates, all with criminal records. These witnesses also testified that Williams told them he shot Pickard after Pickard failed to pay him for "services" he had rendered, and that he talked about "getting rid of" the "9-millimeter gun" he used.

Testifying in his defense, Williams admitted he "drove around" with Pickard for a while and went to the lake. Williams testified the lake was "too dark" so they went to a motel parking lot. There, Pickard "smoked crack" and Williams "did coke." They also smoked marijuana and engaged in sexual conduct. According to Williams, Pickard then went to the store to try to cash the lottery ticket, but was told he would have to come later. Pickard gave the ticket to Williams so Williams could cash it and dropped him off at the motel. Williams denied shooting Pickard and denied telling anyone he did. Asked how the two testifying inmates would know the details of what happened, Williams stated his indictment and other documents relating to his case were in his jail cell. Asked about the knife that was found on him at the time of the arrest, Williams explained Pickard had let him use it to snort the cocaine and cut the marijuana, and he had accidentally kept it. Asked about the gun Mallard saw in the room, Williams testified it belonged to Mallard's boyfriend. Williams stated Mallard's boyfriend was her pimp and he would not be surprised if Mallard's boyfriend had been looking for Pickard to collect money Pickard "owed" Mallard.

–3–

## II. JURISDICTION

Williams contends in his fourth issue that the trial court never acquired jurisdiction over the case, and the judgment is therefore void. Williams bases his argument on the lack of an order transferring the case from the 195th Judicial District Court, where he asserts the case was presented, to the Criminal District Court No. 7, where he was tried.

### A. Applicable Law

A defendant has an absolute right to be tried in a court with jurisdiction over him and the subject-matter of the case. *See Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002). Jurisdiction over felony cases such as capital murder lies in the district or criminal district court where the indictment is first filed. *See* TEX. CODE CRIM. PROC. ANN. arts. 4.05, 4.16 (West 2005); TEX. PENAL CODE ANN. 19.03(b) (West Supp. 2013). Pursuant to the Rules of Administration for Dallas Criminal District Courts and District Courts, criminal cases invoking the district court's jurisdiction shall be filed on a rotating basis among the courts, and any transfer of cases between the courts may be done by written order only. *See* Rules of Administration for Dallas Criminal District Courts and District Courts Giving Preference to Criminal Cases Pursuant to Texas Government Code Section 74.093, rule 1.1, 2.1 (Jan. 12, 2012). No transfer order, however, is required where one court empanels the grand jury that returns the indictment in the case, but the indictment is filed in another court. *See Borque v. State*, 156 S.W.3d 675, 678 (Tex. App.-–Dallas 2005, pet. ref'd).

### B. Application of Law to Facts

The record here reflects the grand jury that returned the indictment in this case was empaneled in the 195th Judicial District Court. However, the indictment itself was filed in the Criminal District Court No. 7, and the case remained in that court throughout its pendency. Because the case was never transferred from the 195th Judicial District Court, no transfer order

was necessary and the trial court, a criminal district court with original jurisdiction over felonies, properly exercised jurisdiction over this case and rendered judgment. *See* TEX. CODE CRIM. PROC. ANN. arts. 4.05, 4.16; *Borque*, 156 S.W.3d at 678. We decide Williams's fourth issue against him.

## III. SUFFICIENCY OF EVIDENCE

In challenging the sufficiency of the evidence in his first issue, Williams does not dispute Pickard was killed in the course of a robbery or attempted robbery. Rather, he asserts reasonable doubt exists he was the perpetrator. He relies on the lack of DNA evidence linking him to the crime and contends the witnesses who testified he admitted to the killing were not credible because of their background. He further contends that although he was found with Pickard's knife and was seen trying to cash the lottery ticket, his testimony showed he accidentally kept the knife and the lottery ticket was payment for "services rendered."

### A. Standard of Review

The legal sufficiency standard of review is well known. In evaluating the sufficiency of the evidence to support a conviction, a reviewing court considers all the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Under this standard, direct and circumstantial evidence cases are treated equally, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 13, (Tex. Crim. App. 2007)). Because the fact finder is the sole judge of the witnesses' credibility and the weight to be given the evidence, the reviewing court defers to the trier of fact's resolution of any conflicts in testimony, weight of the evidence, and

inferences drawn.  *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Hooper*, 214 S.W.3d at 13 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

### B. Applicable Law

The State must prove beyond a reasonable doubt that the accused is the person who committed the offense charged.  *See Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984); *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.).  No formalized procedure is required, and the State can meet its burden by presenting either direct or circumstantial evidence.  *See Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2006, pet. denied).

### C. Application of Law to Facts

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support the judgment of conviction. Although no DNA evidence linked Williams to the crime, none was necessary. *See Umstead v. State*, ___ S.W.3d ____, No. 11-12-00043-CR, 2014 WL 358368 *4 (Tex. App.—Eastland 2014, pet. ref'd); *Tinker v. State*, 148 S.W.3d 666, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  The jury could find from witness testimony alone that Williams was in fact the perpetrator. *See Umstead*, 2014 WL 358368 at *4.  While Williams argues the witnesses' testimony that Williams admitted to them that he committed the offense was not credible because of the witnesses' background and access to documents in Williams's cell containing details about the offense, the jury heard questions at trial addressing these matters and returned a verdict of guilty.  We will not disturb that finding. *See id.* (rejecting appellant's argument that his identification as perpetrator by three witnesses not credible because credibility was issue for jury to decide and jury chose to accept, at least in part, witnesses' testimony); *Short v. State*, 995 S.W.2d 948, 952 (Tex. App.-–Fort Worth 1999, pet. ref'd) (evidence sufficient to support conviction despite witness's felony conviction and

inconsistent testimony). Moreover, as the sole judge of the credibility of the witnesses, the jury could reject Williams's testimony concerning the knife and lottery ticket and find his possession of these items further supported his guilt. *See Knox v. State*, 934 S.W.2d 678, 686 (Tex. Crim. App. 1996) (evidence sufficient, in part, to support capital murder conviction where appellant found in possession of pill bottles stolen from pharmacy where victim killed). We conclude Williams's argument on appeal as to the issue of identity is an attack on the witnesses' credibility and weight to give their testimony, issues within the jury's exclusive province. *See Hooper*, 214 S.W.3d at 13. We decide Williams's first issue against him.

## IV. JURY CHARGE

Williams' second and third issues assert charge error. Williams did not complain of the jury charge at trial, but argues now in his second issue that the trial court erred in failing to limit the definitions of intentionally and knowingly to the applicable conduct elements. He argues in his third issue that the trial court erred by including the following definition of reasonable doubt:

> It is not required that the prosecution prove guilt beyond all possible doubt; it is only required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.

### A. Standard of Review

An appellate court reviewing jury charge error engages in a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The first step is to determine if the charge was erroneous. *Id.* The second step, which occurs only if the reviewing court determines error occurred, is to analyze the error for harm. *Id.* When, as here, error is unpreserved, the reviewing court considers the entire record, including the charge, the state of the evidence, the contested issues, and the parties' argument, to determine if the error was "so egregious" that the accused was deprived of a fair and impartial trial and is entitled to a new trial. *See Cosio v. State*, 353

–7–

S.W.3d 766, 777 (Tex. Crim. App. 2011); *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005).

*B. Applicable Law*

The purpose of the jury charge is to instruct the jurors on the law applicable to the case. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). The charge's abstract paragraphs consist of definitions, legal principles, and pertinent penal law. *See id.* at 367. The charge's application paragraphs apply the law to the facts and authorize the convictions. *See Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013); *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012).

1. Culpable Mental States

The definition of an offense must include a culpable mental state unless the definition plainly dispenses with any mental element. *See* TEX. PENAL CODE ANN. § 6.02(b (West 2011). Section 6.02 of the Texas Penal Code identifies four culpable mental states: (1) intentional; (2) knowing; (3) reckless; and (4) criminal negligence. *See id.* § 6.02(d). The definition of these mental states is tied to the type of offense committed and should be defined in the charge as they relate to the conduct elements involved in a particular offense. *See id.* § 6.03; *Patrick v. State*, 906 S.W.2d 481, 491-92 (Tex. Crim. App. 1995). The type of offenses recognized in the penal code are (a) nature-of-conduct, where punishment is aimed at the specific conduct, not result; (b) circumstances–surrounding-conduct, where the circumstances in which the conduct occurs causes the conduct to be a crime; and (c) result-of-conduct, where punishment is aimed at the specific result, not conduct. *See* TEX. PENAL CODE ANN. § 6.03; *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989).

Section 19.03(a) of the penal code defines capital murder in relevant part as the intentional murder of an individual in the course of a robbery. *See* TEX. PENAL CODE ANN. §

19.03(a)(2). A person commits murder if he "intentionally or knowingly causes the death of an individual." *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person commits robbery if "in the course of committing theft . . . and with intent to obtain or maintain control of the property he . . . intentionally, knowingly, or recklessly causes bodily injury to another." *See* TEX. PENAL CODE ANN. § 29.02(a)(1). A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property." *See* TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2013). To the extent capital murder requires the accused to intentionally or knowingly cause the death of an individual, it is a result-of-conduct offense. *See Patrick*, 906 S.W.2d at 491. To the extent capital murder requires the accused to intentionally commit the murder in the course of committing robbery, it is a nature-of-conduct, circumstances-surrounding-conduct, and result-of-conduct offense. *See Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.-–Dallas 1996, no pet.). It is a result-of-the-conduct offense to the extent robbery requires the accused to intentionally, knowingly, or recklessly cause bodily injury to another. *Id.* To the extent robbery requires the accused to cause the bodily injury "in the course of committing theft," it is a circumstances-surrounding-conduct offense; and, to the extent it requires an unlawful appropriation with intent to obtain or maintain control of the property, it is a nature-of-the conduct offense. *See id.*

## 2. Reasonable Doubt

In *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991), the court of criminal appeals held the term "reasonable doubt" should be defined in the jury charge and instructed the trial courts to include a particular six-paragraph instruction on reasonable doubt in their jury charges. *Geesa*, 820 S.W.2d at 162, *overruled in part by Paulson*, 28 S.W.3d at 573. Nine years later, in *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000), the court reviewed the *Geesa* holding

and concluded two of the six paragraphs were "redundant," "useless," and "ambiguous." *Paulson*, 28 S.W.3d at 572, 573. Those paragraphs provided as follows:

> A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

> Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your affairs.

*See id.* at 572, 573. The court overruled the requirement that trial courts instruct juries on the definition of "beyond a reasonable doubt" and found "the better practice" to be to give no definition of reasonable doubt at all.

### C. Application of Law to Facts

#### 1. Culpable Mental States

Williams's second issue stems from the following abstract paragraphs in the charge:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or to cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Because the charge did not limit each definition to the applicable conduct element, or specify which definition applied to which conduct element, e.g., "caused death" or "unlawful appropriation," Williams asserts the charge was erroneous. *See Hughes v. State*, 897 S.W.2d 285, 296 n.16 (Tex. Crim. App. 1994) (setting forth example of appropriately limited culpable mental state definition). He further asserts the error resulted in egregious harm "because a jury

–10–

reading the full charge would be confused to a degree that they either ignored the confusing aspects of the charge or they misapplied the conduct elements to the culpable mental states."

The failure to limit the culpable mental state definitions to the conduct element or elements of the offense to which they apply is error. *See Patrick*, 906 S.W.2d at 492; *Ash*, 930 S.W.2d at 195. However, viewing the entire record, we conclude Williams was not egregiously harmed. The issue at trial, as reflected by the evidence and parties' arguments, was not whether Williams acted with the culpable mental state, but whether he was the perpetrator. The determination of whether Williams was the perpetrator hinged on the credibility of the witnesses, and the parties focused on that in their closing arguments. No references were made to the charge, and nothing in the record reflects the jury was confused by the charge. In fact, no notes from the jury are contained in the record. Although Williams contends the error was egregious, we conclude otherwise. *See*, *e.g.*, *Lane v. State*, 957 S.W.2d 584, 587 (Tex. App.-–Dallas 1997, pet. ref'd) (concluding, in part, appellant not egregiously harmed by trial court's failure to limit culpable mental state definitions where culpable mental state not contested issue at trial); *Ventroy v. State*, 917 S.W.2d 419, 423-24 (Tex. App.-–San Antonio 1996, pet. ref'd) (same - State did not mention erroneous definition in closing argument). We decide Williams's second issue against him.

### 2. Reasonable Doubt

In arguing in his third issue that the trial court erred by including a reasonable doubt instruction, Williams asserts the instruction given "serves to demarcate one of the boundaries of reasonable doubt" and, as such, defines "reasonable doubt" in violation of the court of criminal appeals's holding in *Paulson* that "the better practice is to give no definition of reasonable doubt at all to the jury." *See Paulson*, 28 S.W.3d at 573. Williams asserts this instruction "constitutes structural error" requiring automatic reversal.

–11–

This instruction, although one of the six instructions the *Geesa* court directed the trial courts to include in their jury charges, is not one of the two the *Paulson* court found "redundant," "useless," and "ambiguous." *See O'Canas*, 140 S.W.3d 695, 700 (Tex. App.-–Dallas 2003, pet. ref'd). Despite having the issue squarely before it, the *Paulson* court did not state this instruction defined "reasonable doubt." *See id.* at 701. Because the *Paulson* court did not find fault with this instruction, we conclude no charge error occurred. Having concluded the court did not err by including this instruction, no harm analysis is necessary. *See Kirsch*, 357 S.W.3d at 649. We decide Williams's third issue against him.

## V. CONCLUSION

Having decided Williams' four issues against him, we affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121465F.U05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

KWAYLON WILLIAMS, Appellant

No. 05-12-01465-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 7, Dallas County, Texas
Trial Court Cause No. F-11-56237.
Opinion delivered by Justice Lang.  Justices
FitzGerald and Fillmore participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.


Judgment entered this 30th day of  July, 2014.