# NO. 12-20-00032-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *REAGAN TODD HORTON,* *APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Reagan Todd Horton appeals his six convictions for retaliation, burglary, deadly conduct, and three counts of assault. In three issues, Appellant argues that (1) the trial court abused its discretion by refusing to submit his insanity defense in its charge, (2) the evidence is insufficient to support the trial court's judgment with regard to his retaliation conviction, and (3) the trial court abused its discretion by overruling his objection to the State's improper jury argument. We affirm.

## BACKGROUND

On May 24, 2019, Appellant was driving in his pickup truck in the parking lot of a Big Lots store in Lufkin, Texas. Appellant's former girlfriend Elizabeth Castillo, a Big Lots employee, and her co-worker, Samuel Weatherred, were driving through the parking lot in Castillo's vehicle when they encountered Appellant. Appellant chased Castillo and Weatherred in his truck, left his vehicle, and had a verbal altercation with Castillo while Weatherred called the police. When Castillo informed Appellant that the police would be there soon, he drove away. An officer stopped Appellant's vehicle a short time later, and Appellant, who denied having been at Big Lots that morning, was issued a warning for criminal trespass. Another officer responded to the Big Lots location, and was told by Castillo and Weatherred that

Appellant chased them with his vehicle in the parking lot. Thereafter, Appellant sent explicit photographs and videos of Castillo to her family members. Appellant also sent a text message to Castillo accusing her of trying to have him arrested. Sometime later, Appellant drove back to Big Lots, fired a shotgun at the glass of the front entrance, and entered the store looking for Castillo. Castillo and two coworkers hid in a break room at the back of the store but could hear Appellant outside calling for Castillo. Appellant left the store before police arrived. Police later arrested Appellant at his residence.

Appellant was charged by indictment with retaliation, burglary, deadly conduct, three counts of assault, and harassment. The indictment further alleged that Appellant used or exhibited a deadly weapon in conjunction with the alleged offenses. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. Following the presentation of evidence, Appellant objected to the court's charge, which failed to submit his requested insanity defense. The trial court overruled Appellant's objection. Ultimately, the jury found Appellant "guilty" as charged on all counts other than the harassment charge, which was dismissed. Following a trial on punishment, the jury assessed Appellant's punishment as follows: imprisonment for twenty-eight years for his retaliation conviction, imprisonment for ten years for each assault conviction, imprisonment for five years for his burglary conviction, and imprisonment for five years for his deadly conduct conviction. This appeal followed.

## INSANITY DEFENSE CHARGE INSTRUCTION

In his first issue, Appellant argues that the trial court abused its discretion by failing to submit his requested insanity defense to the jury.

### Standard of Review and Governing Law

We review alleged jury charge error under a two-step process. *Barrios v. State*, 389 S.W.3d 382, 392 (Tex. App.–Texarkana 2012, pet. ref'd); *see Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Initially, we determine whether an error occurred, and then "determine whether sufficient harm resulted from the error to require reversal." *Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *reaffirmed by Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

2

The trial court shall "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case [and] not expressing any opinion as to the weight of the evidence[.]" TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications when they are raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). "A trial court's decision to deny a defensive issue in a jury charge is reviewed for an abuse of discretion." *Gaspar v. State*, 327 S.W.3d 349, 355 (Tex. App.–Texarkana 2010, no pet.) (citing *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000)). When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of the trial court's opinion about the credibility of the defense. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *VanBrackle v. State*, 179 S.W.3d 708, 712 (Tex. App.–Austin 2005, no pet.); *see also* TEX. PENAL CODE ANN. § 2.03(c) (West 2021). This rule is designed to ensure that the jury, not the trial court, will decide the relative credibility of the evidence. *Granger*, 3 S.W.3d at 38; *VanBrackle*, 179 S.W.3d at 712. A defendant need not testify in order to raise a defense. *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.–San Antonio 2001), *aff'd*, 74 S.W.3d 23, 31 (Tex. Crim. App. 2002). Defensive issues may be raised by the testimony of any witnesses, even those called by the state. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd).

The affirmative defense of insanity applies if "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a) (West 2021). If evidence from any source raises the issue of insanity, the trial court must include an instruction on this defense in the jury charge. *Nutter v. State*, 93 S.W.3d 130, 131 (Tex. App.–Houston [14th Dist.] 2001, no pet.) (citing *Gibson v. State*, 726 S.W.2d 129, 132 (Tex. Crim. App. 1987)). When considered with facts and circumstances concerning an accused and the offense, lay opinion testimony may be sufficient to raise the defense of insanity. *Pacheco v. State*, 757 S.W.2d 729, 736 (Tex. Crim. App. 1988).

**Discussion**

In the instant case, Castillo testified that during a conversation she had with Appellant when he was in jail, he told her he did not remember the events on the day in question and he had periods during which he would not remember events when things "got really bad." Castillo further testified that Appellant began going to the Burke Center[1] to get help after an incident where he cut her. According to Castillo, at the Burke Center, Appellant was diagnosed with depression and began taking medication for it. Castillo explained that when Appellant's mood changed, he had trouble remembering events. She stated that Appellant "was not himself" the week before the shooting and that he was in a "down period." She further stated that she told an officer that she did not expect Appellant to act out to such an extreme degree. She also testified that she took Appellant's medical records to the jail because she wanted Appellant to get his medication.

Angelina County Sheriff's Department Sergeant Christy Tobar testified that she received a call from Appellant's family stating that he required mental health assistance due to his actions and his not having had his medication. Tobar stated that she spoke to Appellant, who "seemed somewhat spaced out" and "emotionally flat like he really didn't know what was going on." As a result of her interaction with Appellant and his family's statements, Tobar contacted the Burke Center to have Appellant undergo a mental health assessment.

Paul Taylor, a crisis assessor with the Burke Center Mobile Crisis Outreach Team, conducted a mental health assessment on Appellant at the Angelina County Jail. Taylor testified that he spoke to Appellant about his current medications. According to Taylor, Appellant told him he did not know why he was in jail and seemed a little confused. Taylor noted Appellant's disassociation based on his stating he did not know why he was in the jail and his having reported that there were periods of time when he did not remember things. Based on his assessment, Appellant's reported episodes, and information he received from jailers about the reason for Appellant's incarceration, Taylor recommended Appellant for a higher level of mental health care. Taylor also concluded that it would be beneficial for Appellant to see a psychiatrist.

Appellant's sister, Leslea Williams, testified that in April 2019, Appellant cut off contact with her and, as a result of this very unusual behavior on Appellant's part, she reached out to her family to check on him. Williams stated that she was aware Appellant was depressed, but she

---

[1] The Burke Center provides, among other things, mental health services.

4

was surprised to learn of his actions in this matter. Julie Horton, Appellant's stepmother, testified that she also noticed a change in Appellant. She described Appellant as having been absent for weeks with no contact with his family.

Eddie Horton, Appellant's father, testified that he regularly checked on Appellant, who he described as seeming "spaced out" and unenergetic. Eddie was aware that Appellant suffered from depression. Appellant's mother, Lane Yates, also checked on Appellant during periods when Appellant cut off contact with his family. She stated that, during these times, Appellant did not seem like himself; he would have good days and bad days. She also stated that her side of the family has a history of mental illness.

Appellant testified that in July 2018, he was suffering from a then-undiagnosed mental illness and went to the Burke Center because he believed something was wrong with him. According to Appellant, at some later date, he began taking medication for depression. Appellant stated that on the day of the incident in question and following his initial encounter with Castillo, when he arrived at his home, he had a severe headache, his ears were ringing, and his vision was disturbed. Appellant described his condition at that time as feeling like he had been hit with a baseball bat.

Appellant stated that following the incident, he had no idea why he was being detained. Once at the jail, Appellant could not remember phone numbers for anyone, which was unusual for him. Appellant testified that when the detectives spoke to him about what happened at Big Lots, he had no recollection of having been in the store. According to Appellant, he believed that he had been at home asleep during that time. He also had no recollection of sending texts to Castillo or her family that morning. Appellant stated that in the past, there were periods during which he could not remember small events but not anything to such an extreme degree. Appellant testified that he began having memory issues after he started taking the drug, Sertraline. Appellant stated that he saw himself on the videos going into the store but did not remember doing it. Appellant further stated he was not in his right mind at that time and he believed that he was suffering from a mental illness, disease, or defect because of his lack of memory of the event.

Here, the testimony Appellant cites in support of his contention supports the premise that he has no recollection of committing the May 24, 2019 offenses at Big Lots. *See, e.g.*, ***Nutter***, 93 S.W.3d at 131. None of the testimony to which Appellant cites or other evidence of record

5

supports that he did not know his conduct was wrong at the time of the robbery. *Id.* at 131-32. Appellant's lack of memory is not enough to establish that he was insane at the time of the offenses. *Id.* at 132 (citing *Cato v. State*, 534 S.W.2d 135, 136–38 (Tex. Crim. App. 1976) (evidence that appellant suffered traumatic amnesia about facts surrounding offense did not raise issue of insanity)); *see also Reyna v. State*, 11 S.W.3d 401, 403 (Tex. App.–Houston [1st Dist.] 2000, pet. ref'd, untimely filed); *Jeffley v. State*, 938 S.W.2d 514, 515 (Tex. App.–Texarkana 1997, no pet.). Furthermore, neither Appellant nor any other witness offered an opinion as to his insanity, i.e., whether as a result of this severe mental disease or defect, he did not know that his conduct was wrong, at the time of the offenses. *See Nutter*, 93 S.W.3d at 132; *see also* TEX. PENAL CODE ANN. § 8.01(a). Viewing the evidence in the light most favorable to Appellant's requested submission, we conclude that the evidence is not sufficient to raise the defense of insanity. *See Nutter*, 93 S.W.3d at 132. Therefore, we hold that the trial court did not abuse its discretion in declining to submit the defensive theory in its charge. Appellant's first issue is overruled.

**EVIDENTIARY SUFFICIENCY**

In his second issue, Appellant contends that the evidence is insufficient to support the trial court's judgment that he is "guilty" of retaliation and the trial court erred in overruling his motion for directed verdict on that basis. Specifically, Appellant argues that the State failed to prove that Castillo was a "prospective witness."

**Standard of Review**

The *Jackson v. Virginia*[2] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315–16, 99 S. Ct. at 2786–87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at

---

[2] 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979).

2789; *see also **Johnson v. State***, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).  The evidence is examined in the light most favorable to the verdict.  *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186.  A jury is free to believe all or any part of a witness's testimony or disbelieve all or any part of that testimony.  *See **Lee v. State***, 176 S.W.3d 452, 458 (Tex. App.–Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).  A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court.  *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt.  ***Rodriguez v. State***, 521 S.W.3d 822, 827 (Tex. App.–Houston [1st Dist.] 2017, no pet.) (citing ***Sorrells v. State***, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011)).  Each fact need not point directly and independently to the guilt of the appellant, provided that the cumulative force of all the incriminating circumstances is sufficient to support the conviction.  *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  Juries are permitted to draw multiple reasonable inferences so long as each inference is supported by the evidence presented at trial.  *Id.* at 15.  Juries are not permitted to reach conclusions based on mere speculation or factually unsupported inferences or presumptions.  *Id.*  An inference is a conclusion reached by considering other facts and deducing a logical consequence from them, while speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented.  *Id.* at 16.

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge.  *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried."  *Id.*

**Discussion**

To meet its burden of proof that Appellant committed the charged offense at issue, the State was required to prove that he intentionally or knowingly harmed or threatened to harm Castillo by an unlawful act in retaliation for or on account of her status as a prospective witness. *See* TEX. PENAL CODE ANN. § 36.06(a) (West. 2016).  A "prospective witness" is "any person

who may testify in an official proceeding." ***Ortiz v. State***, 93 S.W.3d 79, 86 (Tex. Crim. App. 2002). This definition includes any person who is involved in an offense with a defendant or who sees the defendant commit an offense. *See **id.*** The determination of whether someone is a "prospective witness" is determined from the standpoint of the retaliating party. *See **In re B.P.H.***, 83 S.W.3d 400, 408 (Tex. App.–Fort Worth 2002, no pet.). Direct evidence of retaliatory intent is not required; intent can be inferred from the acts, words, and conduct of the accused. *See **Umstead v. State***, 440 S.W.3d 909, 916 (Tex. App.–Eastland 2014, pet. ref'd). Furthermore, an official proceeding need not have been initiated for a person to be considered a "prospective witness." ***Morrow v. State***, 862 S.W.2d 612, 613–14 (Tex. Crim. App. 1993).

In the instant case, there is evidence that Appellant, with whom Castillo had a recent history of animosity, chased Castillo and Weatherred with his vehicle in the Big Lots parking lot on the morning in question. The evidence further reflects that Appellant left his vehicle and had a verbal altercation with Castillo while Weatherred called 9-1-1. Appellant was stopped by law enforcement shortly after this encounter and received a warning for criminal trespass. Weatherred later spoke to a police officer at the scene and told him he did not feel safe. Soon thereafter, Appellant sent a text message to Castillo in which he stated "tried 2 get me arrested because of your f*ck ups u will never be able to show ur face in public again[.]" The record further reflects that Appellant returned to Big Lots with a gun, which he fired at the glass, front entrance before he walked through the store and yelled to Castillo through the breakroom door, "Come out, you coward."

Here, the evidence supports that Appellant was aware that the police were called before he drove away from the Big Lots parking lot. The record further reflects that Castillo and Weatherred gave their accounts of the events to police, stating that Appellant chased them in the Big Lots parking lot and engaged in a verbal altercation with Castillo while Weatherred called police. Weatherred told the officer that responded to the scene that he did not feel safe following the altercation. Castillo's involvement in the events that morning made her a prospective witness against Appellant for criminal trespass. *See **Ortiz***, 93 S.W.3d at 86; *see also* TEX. PENAL CODE ANN. 30.05(a) (West Supp. 2020). The evidence that Appellant returned to Big Lots later that day, armed with a deadly weapon, which he used to shoot the front glass entrance of the store, before walking to the back of the store while still armed and demanding that Castillo, who he called a coward, come out of the break room, amounted to a threat of harm by an unlawful act.

Lastly, Appellant's text message sent prior to his return to Big Lots indicates that he blamed Castillo for his being stopped and issued a warning for criminal trespass.

Based on our review of the record, including the evidence recounted above, we conclude that there was ample evidence to permit the jury to find beyond a reasonable doubt that Appellant intentionally or knowingly threatened to harm Castillo by an unlawful act in retaliation for or on account of her status as a prospective witness. *See* TEX. PENAL CODE ANN. § 36.06(a); *Ortiz*, 93 S.W.3d at 86. Therefore, we hold that the evidence is legally sufficient to support the trial court's judgment and the trial court did not erroneously overrule Appellant's motion for directed verdict on this basis. Appellant's second issue is overruled.

## IMPROPER JURY ARGUMENT

In his third issue, Appellant argues that the trial court abused its discretion by overruling his objection to the state's improper jury argument, in which the prosecuting attorney stated that the community and law enforcement expected the jury to do something with Appellant by finding him "guilty."

The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence. *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019). It should not arouse the passion or prejudice of the jury by matters not properly before it. *Id.* Instead, proper jury argument generally falls within one of four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to an argument of opposing counsel; and (4) plea for law enforcement. *See id.* Generally, the bounds of proper closing argument are left to the sound discretion of the trial court. *Id.* (citing *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010)).

In the instant case, the State argued to the jury as follows:

> Folks, I get so tired, so tired of everybody wanting to escape responsibility. So many people wanting to escape responsibility for what they did. It's not my fault. I didn't do anything. You know, I need to be understood. It's society's fault or it's somebody else's fault, not accepting responsibility for your own actions. Oh, I don't remember whether I did those things. Baloney. Or it's not my fault. She triggered me, or she made me do it. It's always somebody else's fault. It is time that Todd Horton be held responsible for his actions.
>
> Don't let him do what -- or don't do what his attorney wants you to do, just find him guilty of deadly conduct. Find him guilty of the actions that he committed under the law. I

presented that to you. Law enforcement's done everything they can on this case. I've done everything that I can on this case. People all the time say, "When are you folks up at the courthouse going to do something about X?" You know what, today you 12 people are they.

Appellant objected that the State's argument implied that the jury specifically is instructed to have a specific verdict "based on the . . . gist of the case, and it's improper argument."[3]

An argument designed to induce the jury to convict an accused or assess a particular punishment based upon community sentiment long has been held to be improper. *See Goff v. State*, 794 S.W.2d 126, 127 (Tex. App.–Austin 1990, writ ref'd); *see also Wilson v. State*, 179 S.W.3d 240, 247 (Tex. App.–Texarkana 2005, no pet.) (prosecutorial argument is improper if it induces jury to reach particular verdict based on the demands, desires, or expectations of community). However, not every reference to the community made in closing argument by a prosecutor constitutes an improper appeal to community desires. *Goff*, 794 S.W.2d at 127. For instance, when a prosecutor argues that the community desires a more generic result, such as law enforcement or a rational verdict, the argument is not improper. *See id*; *see also York v. State*, 258 S.W.3d 712, 718 (Tex. App.–Waco 2008, pet. ref'd).

In *Smith v. State*, 846 S.W.2d 515, 517 (Tex. App.–Houston [14th Dist.] 1993, writ ref'd), the court of appeals considered a remarkably similar contention that a prosecutor engaged in improper jury argument. There, the prosecutor argued as follows: "You often hear people say, 'What are they doing down there at the courthouse? The whole system has gone crazy. What are they doing down there that it's gotten this way?' Well, today, folks, you are the 'they,' so don't be fooled by argument by the defense." *Id.* The court of appeals concluded that the comments made by the State were a proper plea for law enforcement, which includes encouraging the jury to do something about crime. *See id.* at 518.

In the instant case, the prosecutor led up to the statement to which Appellant objected by discussing personal responsibility and urging the jury to find Appellant guilty of all the acts he committed under the law as the prosecution had presented its case to them. He then made a generalized statement about "people" routinely saying, "When are . . . folks up at the courthouse going to do something about X?" He later equated the jury with these "folks." Based on our review of the record, we conclude that the trial court reasonably could have determined that the

---

[3] We assume arguendo that Appellant's objection was specific enough to preserve error and that the objection made sufficiently comports with his argument on appeal. *See* TEX. R. APP. P. 33.1(a); *Chambers v. State*, 903 S.W.2d 21, 32 (Tex. Crim. App. 1995).

prosecutor's stated variable, "X," referred to crime, and the argument was a permissible plea for law enforcement by encouraging the jury to do something about crime. *See id.* Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's objection to the State's closing argument. Appellant's third issue is overruled.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 12, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 12, 2021**

**NO. 12-20-00032-CR**

**REAGAN TODD HORTON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2019-0448)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

# THE STATE OF TEXAS
# M A N D A T E

**********************************************

**TO THE 159TH DISTRICT COURT OF ANGELINA COUNTY, GREETING:**

Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 4th day of May, 2021, the cause upon appeal to revise or reverse your judgment between

**REAGAN TODD HORTON, Appellant**

**NO. 12-20-00032-CR; Trial Court No. 2019-0448**

Opinion by James T. Worthen, Chief Justice.

**THE STATE OF TEXAS, Appellee**

was determined; and therein our said Court made its order in these words:

"Text goes here."

**WHEREAS, WE COMMAND YOU** to observe the order of our said Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly recognized, obeyed, and executed.

**WITNESS, THE HONORABLE JAMES T. WORTHEN**, Chief Justice of our Court of Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler, this the xx day of May, 2021.

By: _Katrina McClenny_
KATRINA MCCLENNY, CLERK