**366-15 367-15 368-15 369-15 370-15 371-15**

| | | |
|---|---|---|
| SAMUEL DELEON GARZA | § | NO: 06-14-00088-CR |
| APPELLANT | § | NO: 06-14-00089-CR |
| V. | § | NO: 06-14-00090-CR |
| THE STATE OF TEXAS | § | NO: 06-14-00091-CR |
| APPELLEE | § | NO: 06-14-00092-CR |
| | § | NO: 06-14-00093-CR |

IN THE

COURT OF CRIMINAL APPEAL ORIGINAL

OF TEXAS

petition in cause Numbers: 28,996, 28,997, 28,998, 28,999, 29,016, 29,017 From the 196th District Court Hunt County, TEXAS

AND

The Court of Appeals for the sixth District of TEXAS At TEXARKANA, NO: 06-14-00088-CR Through 06-14-00093-CR

## APPELLANT's PETITION FOR Discretionary Review

TO THE HONORABLE COURT OF APPEALS AND JUSTICE THEREOF: SAMUEL DELEON GARZA Appellant's by and through his Appellant's pro-se SAMUEL DELEon GARZA and pursant to the provisions of ARticle 44.45 of the TEXAS Code of criminal procedure 38, et seq., Respectfully Submits this Appellant's petition for Discretionary Review.

SAMUEL DELEON GARZA
TDCJ NO: 1931428
michael unit
2664 FM 2054
Tennessee colony, TX 75886

Pro-se

FILED IN
COURT OF CRIMINAL APPEALS

JUN 04 2015

Abel Acosta, Clerk

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 02 2015

Abel Acosta, Clerk

-i-

## NAME OF All PARTIES

Judge:
Honorable Stephen R. Tittle
196th District Court Judge

Attorney for the
State on appeal:

NOBIE DAN WAlKER, JR
Assistant District Attorney
G Calvin GroGan V
P.O. Box 441
4th Floor Hunt County courthouse
GreenVille, Tx 75 403

Attorney for
Appellant:          Appellant counsel:
JASon A. Duff
P.O. Box 11
Greenville, Tx 75403-0011

Trial counsel:
mr. Christopher L. Castanon
2000 E. Lamar Blvd, suite 600
Arlington, TX 76006

# Table of Contents

| | Page |
|---|---|
| Names of all parties | -i- |
| Table of contents | -iii- |
| Index of Authorities | 1 |
| statement regarding No oral argument | 2 |
| statement of the case | 3 |
| Ground for review | 4 |
| statement of procedural History | 4 |
| Argument | 5-7 |
| prayer for relief | 8 |
| certificate of service | 8 |
| memorandam opinion | 9 |

# Index of Authorities

## FEDERAL

Jackson v. Virginia

443 U.S. At 307-319 (1979) citing Jackson 443 us At 318-19).

## State

Brooks v. state,

323 s.w. 3d 893, 912 (Tex. Crim. App. 2010)

Hooper v. state,

214 s.w. 3d 9,13 (Tex. Crim. App. 2007

Malik v. state,

953 s.w. 2d 234,240 (Tex. Crim. App 1997)

## united states constitution

Fourteenth Amendment

## Statement Regardin No oral argument

No oral argument is requested because, as will be shown below, the trial record and indictment clearly establishes that the evidence was/is insufficient to an affirmative finding.

# Statement of case

On May 31, 2013, Appellant was indicted for Assault Family violence with a prior conviction in cause numbers 28,496, 28,497, 28,499 and 29,016; Retaliation in cause number 29,017; and Burglary of Habitation in cause number 28,998. The alleged crimes occurred from February 2, 2013 through April 7, 2013. On July 31, 2013, Appellant was arraigned and entered pleas of not guilty. CR Vol. 1. p.6.[1] On February 12, 2014, The state filed it's motion To consolidate all cases which was granted by the court on April 22, 2014. CR Vol. 1. pp. 65, 71. Appellant stipulated to his previous Assault Family violence conviction on April 28, 2014, which was offered into evidence as Joint Exhibit No. 1. CR Vol. 1. p. 73, RR Vol. 4. p. 35. On May 5, 2014, the Appellant was found guilty by a jury in cases. CR Vol. 1. p. 9. At punishment, the Appellant pled true to two enhancement paragraphs alleged in the aforementioned indictments. CR Vol. p. 6. The jury assessed punishment at Forty (40) years in the Texas Department of corrections in cause number 28,496. CR Vol. 1. p. 58.[2] The jury assessed punishment at forty-five (45) years in the Texas Department of corrections in cause number 29,016. CR Vol. 1. p. 87. The jury assessed punishment at fifty-two (52) years in the Texas Department of corrections in cause number 28,497. CR Vol. 1. p. 93.[3] The jury assessed punishment at seventy-three (73) years in the Texas Department of corrections in cause number 28,998. CR Vol. 1. p. 90.[4] The jury assessed punishment at eighty (80) years in the Texas Department of corrections in cause number 29,017. The jury assessed punishment at eighty-five (85) years in the Texas Department of corrections in cause number 28,999. CR Vol. 1. p. 88.[5] The court ran all sentences concurrently. The court pronounced sentence on May 6, 2014, and certified the Appellant's right to appeal. CR Vol. 1. p. 92. Appellant gave written notice of appeal in all cases on May 8, 2014. CR Vol. 1. p. 93. Appellant filed a motion for new trial in all cases on June 2, 2014. CR Vol. 1. p. 95.

## Ground of Review

Did the 6th court of appeals reasonably apply clearly established Federal law, under Jackson v. virginia, 443 u.S. At 307, 319 (1979) Citing Jackson 443 u.S. At 318-19), when it affirmed the jury affirmative finding of guilt beyond a reasonable doubt in light of the facts of this cases?

## Statement of Procedural History

on February 17, 2015 the brief was submitted, and on march 10, 2015 the 6th court of appeals affirmed the trial court's judgment on legally sufficient argument on the appeal. The Texas court of criminal appeals granted an extension of time to file this petition for Discretionary Review. Extended to monday, June 08, 2015 for cases No: 06-14-00088-CR through 06-14-00093-CR.

4

## ARGUMENT

Appellant is incarcerated in violation of the Due process clause of the Fourteeth Amendment of the united states constitution after the sixth District court of appeals [un]-reasonably applied clearly established federal law, under Jackson V. Virginia, because no rational trier of fact could have found the essential elements of an affirmative finding of obstruction or retaliation beyond a reasonable doubt in light of the following facts established or lacking at trial.

In companion cases No. 06-14-00088-CR, 06-14-00089-CR, 06-14-00091-CR, and 06-14-00092-CR, Appellant appeals from four convictions of assault dating violence, with a previous conviction of assault family violence. In conpanion case 06-14-00090-CR, Appellant appeals from conviction of burglary of a habitation. In evaluating legal Sufficiency, we review all the evidence in the light most favorable to the jury verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. Brooks V. state, 323 s.w. 3d 893, 912 (Tex. crim. App. 2010) (citing Jackson V. Virginia, 443 307, 319 (1979). My rigorous legal sufficency review focuses on the quality of the evidence presented. Brooks, 323 s.w. 3d at 917-18 (cochran, J. concurring). We examine legal Sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inference from basic facts to ultimate testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Hooper V. state, 214 s.w. 3d 9, 13 (Tex. crim. App. 2007) (citing Jackson 443 U.S. at 318-19). Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. Malik V. state, 953 s.w. 2d 234, 240 (Tex. crim. App 1997. The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the

states burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense which the defendent was tried." Id. A person commits the offense of obstruction or retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawfull act in retaliation for, or on account of, the other's service (1) a witness or informent, or (2) a person who has reported the occurrence of a crime. Tex. penal code ANN. $36.06 (a)(1)(west 2011). "Harm" means anything reasonably regarded as loss, disadvantage, or injury". Tex. penal code ANN. $1.07 (a)(25)(west supp. 2014). Here, the state's indictment contained an error that forms the basis of the complaint on appeal. The indictment read,

Samuel Deleon Garza

Did then and there intentionally or knowingly harm or threaten to harm Maria Ulloa, hereinafter called complainant, by an unlawful act, Namely;

(1) on February 4, 2013, Defendant harmed complainant by kicking complainant's leg or by pushing complainant to or against the floor;

(2) on February 4, 2013 Defendant harmed complainant by pushing complainant to or against the floor or by striking complainant's chest or body;

(3) on February 5, 2013 Defendant harmed complainant by striking complainant's head or face or by pulling complainant's hair or by pushing complainant to or against the floor; OR

(4) on February 8, 2013, Defendant harmed or threated to harm complainant by breaking her vehicle's window and texting "Eye For an eye! Bitch";

6

and said unlawful act was in Retaliation for or on account of the service or status of complainant as a witness or a prospective witness or an informant or a person who had reported the occurrence of a crime, ~~namely:~~

And it is further presented in and to said court that, prior to the commission of the aforesaid, on the 19th day of FEBRUARY, 2009[,] A.D., in cause number 24508 in the 354th JUDICIAL DISTRICT COURT of HUNT County, Texas, the Defendant was convicted of POSSESSION OF A CONTROLLED SUBSTANCE, NAMELY METHAMPHETAMINE, IN AN AMOUNT OF 4 GRAMS OR [M]ORE BUT LESS THAN 200 GRAMS and said conviction is a final conviction.

And it is further presented in and to said court that, prior to the commission of the aforesaid offenses, on the 28th day of FEBRUARY, 2011, A.D., in cause number 26935 in the 254th JUDICIAL DISTRICT COURT of HUNT County, Texas, the Defendant was convicted of POSSESSION OF A CONTROLLED SUBSTANCE PG1> =1G<4G and said conviction is a final conviction. (Emphasis added).

Capitalizing on the state's mistake in having included the word "namely", but then erroneously omitting the offense or offenses which should have been named before settin forth the enhancement paragraphs, the arguement (1) that the hypothetically correct jury charge requires ~~that~~ the state to prove that Garza harmed Ulloa in retaliation for her connections to the 2009 and 2011 offenses and (2) that because there is no evidence that Ulloa was a witness, prospective witness, or informant in the 2009 and 2011 cases, there is a material variance between the indictment and the proof at trial. That makes the indictment Void. Garza concedes he did not object to the reading of the original indictment at trial, but he asked this court to excuse him from the Rule requiring errors to be preserved at trial. Rule 33.1 of the Texas Rules of appelate procedure requires a complaint be made to the trial court by a timly request, objection, or motion.

7

## prayer for Relief

wherefore, premises considered, Appellant humbly prays that this court Grants this petition, remand this cases back to the court of appeals with instructions to reverse the judgment of the trial court as to the insufficiency of evidence and reform the judgment to reflect the same.

Respectfully submitted

5·28·2015

Samuel Deleon Garza

#1931428

micheal unit

2664 Fm 2054

Tennessee colony, TX 75886

Pro-se

## CERtificate of service

I certify that a true correct copy of this petition for Discretionary Review was to the States Attorney by placing same in the micheal unit mail box, postage pre-paid on and addressed to: DAN walker, JR

P.O. Box 441

4th floor Hunt county court house

Greenville, TX 75403

5·28·2015

## Memorandum Opinion

A jury convicted samuel Deleon Garza of assault arising out of his dating relationship with maria ulloa. Due to a previous conviction for assault involving family violence, Garza's offense was enhanced from a misdemeanor to a third degree felony. see Tex. penal code ANN. § 22.01 (b)(2)(A) (west supp. 2014). on appeal, Garza argues (1) that the hypothetically correct jury charge requires that the state to prove that Garza harmed ulloa in retaliation for her connections to the 2009 and 2011 offenses and (2) that because there is no evidence that ulloa was a witness, prospective witness, or informant or dating Garza in the 2009 and 2011 cases, there is a material variance between the indictment and the proof at trial.

Hypothetically correct jury charge, as used to measure sufficiency of evidence to support conviction, need not incorporate allegations that give rise to immaterial VARIANCE between indictment and proof; case law allowing certain allegations in indictment to be disregarded as surplusge is overruled, along with case law stating exception to that rule, and overruling.



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00088-CR

_____

SAMUEL DELEON GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28,996

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

A jury convicted Samuel Deleon Garza of assault arising out of his dating relationship with Maria Ulloa. Due to a previous conviction for assault involving family violence, Garza's offense was enhanced from a misdemeanor to a third degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2014). Because Garza had previously committed two other felony offenses, the jury was instructed to assess punishment "for any term of not more than 99 or less than 25 years." TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). Garza pled "true" to the State's enhancement allegations and was sentenced to forty years' imprisonment. On appeal,[1] Garza argues only that the evidence was legally insufficient to prove that he and Ulloa had a dating relationship. We find that legally sufficient evidence establishes Garza's and Ulloa's dating relationship. Consequently, we affirm the trial court's judgment.

## I.    Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in

---

[1]In companion cases 06-14-00089-CR, 06-14-00091-CR, and 06-14-00092-CR, Garza appeals from three other convictions of assault dating violence, with a previous conviction of assault family violence. In companion case 06-14-00090-CR, Garza appeals from a conviction of burglary of a habitation. In companion case 06-14-00093-CR, Garza appeals from a conviction of obstruction or retaliation.

2

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2014). An assault is a third degree felony if (1) it was "committed against . . . a person whose relationship to or association with the defendant is described by Section 71.0021(b)" of the Texas Family Code, and (2) the defendant has been previously convicted of assault "against . . . a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005" of the Texas Family Code. TEX. PENAL CODE ANN. § 22.01(b)(2)(A). Section 71.0021(b), titled "Dating Violence," defines a "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b) (West 2014). "The existence of such a relationship [is] determined based on consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the

relationship." *Id.* "A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a 'dating relationship' . . . ." TEX. FAM. CODE ANN. § 71.002(c) (West 2014).

In its indictment, the State alleged that on or about February 2, 2013, Garza "intentionally, knowingly, or recklessly cause[d] bodily injury to MARIA ULLOA, . . . with whom the defendant had or had had a dating relationship, by pulling [Ulloa's] hair or by striking [Ulloa's] head or face with [his] hand." Here, in order to establish the indicted offense, the State had to prove (1) that Garza intentionally, knowingly, or recklessly caused bodily injury to Ulloa, (2) that Garza and Ulloa had a dating relationship, and, (3) that Garza had previously been convicted of assault family violence.[2] Garza only challenges the second requirement.

## II.  Legally Sufficient Evidence Established that Ulloa Was in a Dating Relationship with Garza

The facts of this case are discussed in detail in our opinion in Garza's companion case, cause number 06-14-00093-CR, in which he appeals his conviction for obstruction or retaliation. Therefore, we discuss only the facts relevant to the determination of whether Ulloa was in a dating relationship with Garza.

A jury was permitted to find Garza guilty of this offense if he and Ulloa "had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b) (West 2011); *see also Hill v. State*, No. 01-10-00926-CR, 2012 WL 983338, at *3 (Tex. App.— Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op., not designated for publication) (citing *White v. State*, No. 05-09-00112-CR, 2010 WL 2951748, at *2 (Tex. App.—Dallas July 29,

---

[2]The term "family violence" includes dating violence. TEX. FAM. CODE ANN. § 71.004 (West 2014).

4

2010, pet. ref'd) (mem. op., not designated for publication).[3] Garza argues that the evidence only established that he and Ulloa "had a casual acquaintanceship, either in social context or even charity." We disagree.

In December 2012, Ulloa met Garza as a married woman who had not seen her husband in ten years. In spite of her status as a legally married woman, she began dating Garza after he asked her out two weeks later. Garza spent the night at Ulloa's home approximately three nights out of the week. Michael (a pseudonym), Ulloa's young son, testified that Garza "would just like come and go." The two shared a bedroom, Garza kept some of his clothes there, and Ulloa cooked for Garza and did his laundry. Garza, who was unemployed, borrowed Ulloa's vehicle every night. Although Ulloa was aware that Garza was also dating someone else, she testified that she fell in love with her new boyfriend and that the two discussed the possibility of marriage. At some point during their relationship, Ulloa gave a photograph of herself to Garza with a note expressing her love for him scribbled on the back.

According to Ulloa, Garza began physically abusing her, but because she loved Garza, Ulloa endured the abuse for two months. Ulloa testified that on February 2, 2013, Garza assaulted her after accusing her of having an affair. Ulloa testified that even though Garza had assaulted her in the past, she continued to talk on the telephone with Garza until, on April 7, 2013, he assaulted her again and instructed her that he did not want to see her dating anyone else. When Ulloa talked with police officers after the assaults, she informed them that she was dating Garza.

---

[3]Although unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

The evidence shows that Ulloa was previously married, that Garza had another girlfriend, and that Garza abused Ulloa. However, there is also evidence that Garza slept with Ulloa approximately three nights out of the week, that he kept some of his belongings there, that Ulloa loved Garza and discussed the possibility of marrying him, and that she considered Garza her boyfriend. It is up to the jury to resolve conflicts in and to weigh the evidence. *Hooper*, 214 S.W.3d at 13. We find that the evidence was sufficient for a rational jury to find, beyond a reasonable doubt, that Garza and Ulloa had a dating relationship as defined by the Texas Family Code. Accordingly, we overrule Garza's sole point of error on appeal.

## III. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted: February 17, 2015
Date Decided: March 10, 2015

Do Not Publish



## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00089-CR

---

SAMUEL DELEON GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28,997

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

A jury convicted Samuel Deleon Garza of assault arising out of his dating relationship with Maria Ulloa. Due to a previous conviction for assault involving family violence, Garza's offense was enhanced from a misdemeanor to a third degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2014). Because Garza had previously committed two other felony offenses, the jury was instructed to assess punishment "for any term of not more than 99 years or less than 25 years." TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). Garza pled "true" to the State's enhancement allegations and was sentenced to fifty-two years' imprisonment.

On appeal,[1] Garza argues only that the evidence was legally insufficient to prove that he and Ulloa had a dating relationship. We addressed this same issue in detail in our opinion of this date on Garza's appeal in cause number 06-14-00088-CR. For the reasons stated therein, we likewise conclude that legally sufficient evidence established Garza's and Ulloa's dating relationship. Accordingly, we overrule Garza's sole point on appeal.

---

[1]In companion cases 06-14-00088-CR, 06-14-00091-CR, and 06-14-00092-CR, Garza appeals from three other convictions of assault dating violence, with a previous conviction of assault family violence. In companion case 06-14-00090-CR, Garza appeals from a conviction of burglary of a habitation. In companion case 06-14-00093-CR, Garza appeals from a conviction of obstruction or retaliation.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     February 17, 2015
Date Decided:       March 10, 2015

Do Not Publish



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00090-CR

_____


SAMUEL DELEON GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28,998


Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

A jury convicted Samuel Deleon Garza of burglary of a habitation. Garza pled "true" to the State's enhancement allegations and was sentenced to seventy-three years' imprisonment. On appeal,[1] Garza argues that the evidence is legally insufficient to support the jury's verdict. We overrule his point of error and affirm the trial court's judgment.

## I.      Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment,

---

[1] In companion cases 06-14-00088-CR, 06-14-00089-CR, 06-14-00091-CR, and 06-14-00092-CR, Garza appeals from four convictions of assault dating violence, with a previous conviction of assault family violence. In companion case 06-14-00093-CR, Garza appeals from a conviction of obstruction or retaliation.

does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of burglary of a habitation if, "without the effective consent of the owner, the person: (1) enters a habitation . . . with intent to commit . . . an assault." TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). The State's indictment alleged that Garza "did then and there intentionally or knowingly enter a habitation without the effective consent of MARIA ULLOA, the owner thereof, and commit assault against MARIA ULLOA." Garza does not deny the unlawful entry. Instead, he argues that the State's mistake in its indictment required it to show that an assault was actually committed and that there was no evidence that he "committed assault in the course of an unlawful entry."

## II. Legally Sufficient Evidence Supports the Jury's Verdict

The facts of this case are discussed in detail in our opinion in Garza's companion case, cause number 06-14-00093-CR, in which he appeals his conviction for obstruction or retaliation. Therefore, we discuss only the facts relevant to the determination of whether Garza committed the offense of burglary of a habitation.

Although Garza and Ulloa were dating, they maintained separate residences. The evidence at trial established that on the occasion giving rise to this conviction, Garza kicked down Ulloa's front door in the middle of the night. Photographs of the damaged front door were shown to the jury. According to Ulloa, Garza then broke into her locked bedroom and woke her from her sleep by hitting her in the face. Ulloa's young son, Michael (a pseudonym), testified

3

that he witnessed Garza push Ulloa into the bedroom door, causing her to fall back and hit her head on a hard surface. Michael ran to the neighbor's house, dialed 9-1-1, and informed the dispatcher that Garza had hit his mother's head on a door. Leigh Dixon, an officer with the Greenville Police Department, responded to Michael's call. Dixon testified that Ulloa was crying hysterically because she had been "woken from her sleep and assaulted." Photographs taken of Ulloa after this assault depicted Ulloa's freshly-bloodied face and scalp.[2] Dixon requested medical assistance for Ulloa.

We find this evidence legally sufficient to support the jury's verdict.

### III. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted: February 17, 2015
Date Decided: March 10, 2015

Do Not Publish

---

[2]Garza argues that because he had previously assaulted Ulloa twice within a twenty-four-hour period, there was no evidence to suggest that the injuries to her face and scalp were new. However, police officers photographed Ulloa after each of Garza's assaults. A comparison of the photographs demonstrates that Ulloa sustained new injuries during the assault that followed Garza's break-in.

4



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-14-00091-CR
_____


SAMUEL DELEON GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28,999



Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

A jury convicted Samuel Deleon Garza of assault arising out of his dating relationship with Maria Ulloa. Due to a previous conviction for assault involving family violence, Garza's offense was enhanced from a misdemeanor to a third degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2014). Because Garza had previously committed two other felony offenses, the jury was instructed to assess punishment "for any term of not more than 99 years or less than 25 years." TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). Garza pled "true" to the State's enhancement allegations and was sentenced to eighty-five years' imprisonment.

On appeal,[1] Garza argues only that the evidence was legally insufficient to prove that he and Ulloa had a dating relationship. We addressed this same issue in detail in our opinion of this date on Garza's appeal in cause number 06-14-00088-CR. For the reasons stated therein, we likewise conclude that legally sufficient evidence established a dating relationship between Garza and Ulloa. Accordingly, we overrule Garza's sole point of error on appeal.

---

[1] In companion cases 06-14-00088-CR, 06-14-00089-CR, and 06-14-00092-CR, Garza appeals from three other convictions of assault dating violence, with a previous conviction of assault family violence. In companion case 06-14-00090-CR, Garza appeals from a conviction of burglary of a habitation. In companion case 06-14-00093-CR, Garza appeals from a conviction of obstruction or retaliation.

2

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     February 17, 2015
Date Decided:       March 10, 2015

Do Not Publish

3



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00092-CR

---

SAMUEL DELEON GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 29,016

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

A jury convicted Samuel Deleon Garza of assault arising out of his dating relationship with Maria Ulloa. Due to a previous conviction for assault involving family violence, Garza's offense was enhanced from a misdemeanor to a third degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2014). Because Garza had previously committed two other felony offenses, the jury was instructed to assess punishment "for any term of not more than 99 years or less than 25 years." TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). Garza pled "true" to the State's enhancement allegations and was sentenced to forty-five years' imprisonment.

On appeal,[1] Garza argues only that the evidence was legally insufficient to prove that he and Ulloa had a dating relationship. We addressed this same issue in detail in our opinion of this date on Garza's appeal in cause number 06-14-00088-CR. For the reasons stated therein, we likewise conclude that legally sufficient evidence established Garza's and Ulloa's dating relationship. Accordingly, we overrule Garza's sole point on appeal.

---

[1]In companion cases 06-14-00088-CR, 06-14-00089-CR, and 06-14-00091-CR, Garza appeals from three other convictions of assault dating violence, with a previous conviction of assault family violence. In companion case 06-14-00090-CR, Garza appeals from a conviction of burglary of a habitation. In companion case 06-14-00093-CR, Garza appeals from a conviction of obstruction or retaliation.

2

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    February 17, 2015
Date Decided:     March 10, 2015

Do Not Publish

3



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00093-CR

SAMUEL DELEON GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 29,017

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

A jury convicted Samuel Deleon Garza of obstruction or retaliation, a third degree felony. *See* TEX. PENAL CODE ANN. § 36.06(c) (West 2011). Garza entered a plea of "true" to the State's enhancement allegations, raising the penalty range to a "term of not more than 99 years or less than 25 years." TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). The jury assessed Garza a punishment of eighty years' imprisonment. On appeal, Garza's sole point of error rests on his argument that the evidence was legally insufficient to prove obstruction or retaliation.[1] We find that legally sufficient evidence supports Garza's conviction and affirm the trial court's judgment.

## I. Standard of Review and the Hypothetically Correct Jury Charge

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

---

[1] In companion cases 06-14-00088-CR, 06-14-00089-CR, 06-14-00091-CR, and 06-14-00092-CR, Garza appeals from four convictions of assault dating violence, with a previous conviction of assault family violence. In companion case 06-14-00090-CR, Garza appeals from a conviction of burglary of a habitation.

2

facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of obstruction or retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for, or on account of, the other's service as (1) a witness or informant, or (2) a person who has reported the occurrence of a crime. TEX. PENAL CODE ANN. § 36.06(a)(1) (West 2011). "'Harm' means anything reasonably regarded as loss, disadvantage, or injury." TEX. PENAL CODE ANN. § 1.07(a)(25) (West Supp. 2014).

Here, the State's indictment contained an error that forms the basis of Garza's complaint on appeal. The indictment read,

> SAMUEL DELEON GARZA
>
> did then and there intentionally or knowingly harm or threaten to harm MARIA ULLOA, hereinafter called Complainant, by an unlawful act, namely:
>
> > (1) On February 4, 2013, Defendant harmed Complainant by kicking Complainant's leg or by pushing Complainant to or against the floor;

(2) On February 4, 2013, Defendant harmed Complainant by pushing Complainant to or against the floor or by striking Complainant's chest or body;

(3) On February 5, 2013, Defendant harmed Complainant by striking Complainant's head or face or by pulling Complainant's hair or by pushing Complainant to or against the floor; OR

(4) On February 8, 2013, Defendant harmed or threatened to harm Complainant by breaking her vehicle's window and texting "Eye for an eye! Bitch";

and said unlawful act was in retaliation for or on account of the service or status of Complainant as a witness or a prospective witness or an informant or a person who had reported the occurrence of a crime, **namely:**

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense, on the 19th day of FEBRUARY, 2009[,] A.D., in cause number 24508 in the 354th JUDICIAL DISTRICT COURT of HUNT County, Texas, the Defendant was convicted of POSSESSION OF A CONTROLLED SUBSTANCE, NAMELY METHAMPHETAMINE, IN AN AMOUNT OF 4 GRAMS OR [M]ORE BUT LESS THAN 200 GRAMS and said conviction is a final conviction;

And it is further presented in and to said Court that, prior to the commission of the aforesaid offenses, on the 28th day of FEBRUARY, 2011, A.D., in cause number 26935 in the 254th JUDICIAL DISTRICT COURT of HUNT County, Texas, the Defendant was convicted of POSSESSION OF A CONTROLLED SUBSTANCE PG 1 >=1G<4G and said conviction is a final conviction.

(Emphasis added).

Capitalizing on the State's mistake in having included the word "namely," but then erroneously omitting the offense or offenses which should have been named before setting forth the enhancement paragraphs, Garza argues (1) that the hypothetically correct jury charge requires the State to prove that Garza harmed Ulloa in retaliation for her connections to the 2009

4

and 2011 offenses and (2) that because there is no evidence that Ulloa was a witness, prospective witness, or informant in the 2009 and 2011 cases, there is a material variance between the indictment and the proof at trial. We disagree with Garza's reading of the indictment.

The State alleged that Ulloa was a "witness or an informant or a person who had reported the occurrence of a crime," and, although the phrase was followed by the word "namely," the State left blank Garza's crime or crimes which Ulloa allegedly witnessed or reported or about which she provided information to the authorities. Plainly, even though the word "namely" is directly followed by the descriptions of the convictions used for the purpose of enhancing the charged offense, it would be nonsense for the indictment to charge that Ulloa was involved as a witness or reported information about offenses committed by Garza for which he was convicted in 2009 and 2011, long before Ulloa even knew him. It is plain to see that there was a simple omission of the present offenses (for which Garza was contemporaneously tried).

A plain reading of the indictment demonstrates that the State did not allege that Ulloa was a witness, prospective witness, or informant for either the 2009 or the 2011 offenses which were mentioned for the purpose of enhancement. Garza's comprehension of the charges for which he was on trial was demonstrated by his acquiescence to the jury charge (which did not require the jury to find that Ulloa was a witness or prospective witness to, or an informant regarding the 2009 or 2011 offenses) and his recognition of and pleas of true to the enhancement allegations. *See Simmons v. State*, 106 S.W.3d 756, 761 (Tex. App.—Texarkana 2003, no pet.). Further, during voir dire, the State informed the jury panel, without objection, (1) that the "indictment alleges . . . the defendant is retaliating based on the burglary of a habitation" and

5

"the assault family violences being reported by Ms. Ulloa" and (2) that Garza wanted "to get back at Ms. Ulloa because she reported him to the Greenville Police Department."[2] Also, the indictment was corrected when it was read in open court prior to Garza's plea. *See Hall v. State*, 62 S.W.3d 918, 919–20 (Tex. App.—Dallas 2001, pet. ref'd).

We find that the State did not allege that the retaliation for which Garza was charged involved those offenses described in the enhancement allegations. Thus, under the hypothetically correct jury charge, the State had the burden of proving that (1) Garza (2) intentionally or knowingly (3) harmed or threatened to harm Ulloa by committing one or more of the four acts set forth in the indictment (4) in retaliation for or on account of (5) Ulloa's service as a witness, prospective witness, informant, or a person who reported the occurrence of a crime. To establish whether the State met its burden of proof, we examine the record to uncover the disturbing events that occurred in the first week of February 2013.

## II. Factual Background

In December 2012, Ulloa (who, although married, had not seen her husband in ten years) met Garza. Two weeks after they met, despite the existence of her marriage, Ulloa commenced her tumultuous relationship with Garza by agreeing to accompany him on a date. Soon, Garza started spending approximately three nights per week at Ulloa's home. Michael,[3] Ulloa's son, testified that Garza "would just like come and go." When Garza spent the night, he shared a

---

[2]The jury charge recited the substantive crimes committed by Garza against Ulloa but repeated the same error as the indictment by failing to specifically name the associated crimes about which Garza attempted to retaliate against Ulloa. However, unlike the indictment, this omission was not immediately followed by a recitation of the enhancement convictions. Garza raised no objection to this part of the jury charge.

[3]This is a pseudonym for this child, who was nine years old at the time of trial.

6

bedroom with Ulloa, Garza kept some of his clothes at Ulloa's home, and Ulloa cooked for Garza and did his laundry. Garza, who was unemployed, borrowed Ulloa's vehicle every night. Although Ulloa was aware that Garza was simultaneously dating another woman, she testified that she fell in love with Garza and said that the two discussed the possibility of marriage.

Ulloa testified, however, that shortly after their relationship began, Garza began to verbally abuse Ulloa and that the verbal abuse evolved into physical abuse three weeks into their relationship. Michael testified that Garza committed "domestic violence on [his] mom." Garza regularly apologized for his behavior, and Ulloa forgave him just as regularly. Ulloa testified that she endured Garza's physical abuse for two months before threatening to report his behavior to the police. Garza's conduct gave no evidence that he was intimidated by this threat.

At about 1:50 a.m. on February 2, 2013, Garza appeared at Ulloa's door. Garza immediately accused her of having an affair with another man as a predicate to striking her in the mouth, breaking her tooth. Fearing for her life, Ulloa called the police as Garza fled. Gary Don Barrow, II, an officer with the Greenville Police Department, testified that Ulloa "was bleeding from the chin and mouth area, [and] looked like she had been beaten up." He took photographs of Ulloa's bloody lip and mouth, which were shown to the jury. Garza was later apprehended.[4]

On February 3, 2013, Ulloa received a telephone call from detective Mike Johnston, who informed her that Garza had been arrested and that it was necessary to pay $175.00 for him to be released. Johnston also indicated that he wanted to speak to Ulloa about the use of her truck during the commission of a possible extraneous offense. Ulloa went to the Greenville Police

---

[4]This incident resulted in Garza's conviction for assault dating violence with a previous conviction of assault family violence. Garza appeals from that conviction in companion case number 06-14-0088-CR.

7

Department, paid Garza's bond, and spoke to Johnston about the alleged extraneous offense. According to Johnston, Ulloa denied Garza's involvement in the suspected criminal activity, but implicated other individuals.

From February 4 through February 5, 2013, Garza committed three separate instances of assault against Ulloa. After Garza was released from jail on February 4, he returned to Ulloa's house early in the morning, broke down her front door, and accused her of "snitching." Ulloa testified that on that occasion, Garza hit her in the face and kicked her in the leg. Michael, who witnessed the assault, testified, "My mom [was] on the ground and [he was] above her hitting her." Michael also saw Garza pocket Ulloa's cell phone before she could call the police, leaving her vulnerable and crying on the ground. Michael ran to a neighbor's house, dialed 9-1-1, telling the emergency dispatcher of Garza's conduct toward his mother and of his confiscation of Ulloa's cell phone (making it impossible for her to use it to call the police). The police responded with sirens screaming. Garza, hearing the police sirens, fled before he could be apprehended by responding officers, Leigh Dixon and Barrow, who arrived at approximately 6:00 a.m. According to Dixon, Ulloa was crying and claimed to have been assaulted.[5]

Several hours later, Garza returned with Cody Acreage, a mutual friend who asked Ulloa if she would speak to Garza through the crack in a barely-opened front door. When Ulloa declined the offer, Garza pushed the door open and began once more to beat Ulloa, hitting her in the face and chest, shoving her to the ground, and yanking her hair. (Michael testified that Garza

---

[5]This first February 4 incident resulted in Garza's conviction for assault dating violence with a previous conviction of assault family violence. Garza appeals from that conviction in companion case 06-14-00092-CR.

8

"yanked [Ulloa] down and hit her in the head" twice with his fists.) Michael once again resorted to running to the neighbor's house and reporting the incident to the police dispatcher who responded to the 9-1-1 call he placed. Dixon, Barrow, and West responded to this call. Because Garza had already fled, the officers took more photographs of Ulloa, which depicted redness on her chest and neck. Then, they left, giving Garza an opportunity to return.[6]

After the police left, Garza returned again and kicked down Ulloa's front door. Photographs of the damaged front door were shown to the jury. According to Ulloa, Garza then broke into her locked bedroom, and she was awakened by his blows to her face. Michael testified that he witnessed Garza push Ulloa into the bedroom door, causing her to fall back and hit her head on a hard surface. For the third time within a twenty-four-hour period, Michael ran to the neighbor's house, dialed 9-1-1, and informed the dispatcher that Garza had hit his mother's head on a door. Dixon, who responded to Michael's call, testified that Ulloa was crying hysterically because she had been "woken from her sleep and assaulted." Photographs taken of Ulloa after this assault depicted Ulloa's bloodied face and scalp. Dixon requested medical assistance for Ulloa.[7]

Garza's February 4 and February 5 assaults did not end his relationship with Ulloa. Consistent with his pattern of behavior, Garza apologized for what he had done to her, and Ulloa continued communicating with him by telephone. On February 7, 2013, around 7:00 a.m., Garza called Ulloa and asked if he could collect his belongings from her home, and Ulloa consented.

---

[6]This second February 4 incident resulted in Garza's conviction for assault dating violence with a previous conviction of assault family violence. Garza appeals from that conviction in companion case 06-14-00089-CR.

[7]This last February 5 incident resulted in Garza's conviction for burglary of a habitation. Garza appeals from that conviction in companion case 06-14-00090-CR.

9

Garza came and took his things as he indicated he would, but after he left, Garza texted Ulloa, "Go look at ur truck bitch." Ulloa stepped outside to discover that Garza had thrown a brick through her truck's rear window. Two minutes after the first text message, Garza texted, "Eye for an eye! Bitch," and affixed a winking emoticon as punctuation. Officer Victor Ray Petrea responded to Ulloa's report of the property damage and took photographs of the damaged truck.

On February 9, 2013, Barrow located and arrested Garza. Although Ulloa did not see Garza again until April, the two continued to communicate with one another by telephone. In April, Ulloa saw Garza in a parking lot. Ulloa testified that Garza walked over to her truck, opened the door, struck her in the mouth with his fist, told her that he did not want to see Ulloa with anyone else, and left. A photograph of Ulloa's injuries from this incident documented a black eye and a bleeding laceration on her face.[8]

After having heard this evidence, the jury convicted Garza of obstruction or retaliation.

## III.   Sufficient Evidence Supports the Jury's Verdict

Garza argues that there is no evidence that he was "aware that his conduct was reasonably certain to be in retaliation of anything." We disagree.

"One who witnesses an offense but who has not yet testified in a trial involving that offense is a prospective witness." *Solomon v. State*, 830 S.W.2d 636, 637 (Tex. App.— Texarkana 1992, pet. ref'd) (citing *Benson v. State*, 661 S.W.2d 708 (Tex. Crim. App. 1982), *overruled on other grounds by Malik*, 953 S.W.2d 234). "[W]hether one is a prospective witness must be judged from the standpoint of the one who retaliates." *Id.*; *see Morrow v. State*, 862

---

[8]This April incident resulted in Garza's conviction for assault dating violence with a previous conviction of assault family violence. Garza appeals from that conviction in companion case 06-14-00091-CR.

10

S.W.2d 612, 615 (Tex. Crim. App. 1993). "[R]etaliatory intent may be inferred from an accused's acts, words, or conduct." *Umstead v. State*, 440 S.W.3d 909, 916 (Tex. App.—Eastland 2014, pet. ref'd) (mem. op.); *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.) (citing *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982)).

Prior to February 3, 2013, Ulloa told Garza that she would "put charges against him" if he did not stop physically abusing her. On February 2, 2013, Garza assaulted Ulloa, this assault prompting Ulloa to inform the police. Shortly thereafter, Garza was arrested. Ulloa received a telephone call from detective Johnston, who wanted to talk to her about Garza's possible involvement in an extraneous offense involving her truck. Ulloa went to the Greenville Police Department, spoke with Johnston, and implicated others in the extraneous crime. After his release from jail on February 4, 2013, Garza called Ulloa a "snitch" and assaulted her once again. Although Garza fled as the police were arriving, he twice returned to assault her. On February 7, 2013, Garza damaged Ulloa's truck and texted her the adage of an "eye for an eye" as the reason for the harm. In light of this evidence, a rational jury could find that Garza's actions were in retaliation for Ulloa's decision to (1) report Garza's February 2 crime of assault, (2) cause Garza's arrest for the February 2 assault, (3) become an informant or prospective witness for the February 2 offense, (4) implicate others in discussing the extraneous offense with Johnston,[9] (5) inform the police of the three incidents in February, and (6) cause Garza's February 9 arrest.

---

[9] A "person committing an offense need not be the person against whom the prospective witness could testify if he is charged under the law of parties." *See Umstead*, 440 S.W.3d at 916.

11

Because we find the evidence legally sufficient to support the jury's verdict of guilt, we overrule Garza's sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:    February 17, 2015
Date Decided:     March 10, 2015

Do Not Publish

12